FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 MAR 10  AM 11: 49

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

HARRY E. HUGHES                              CIVIL ACTION

VERSUS                                       NUMBER: 04-2566

JO ANNE B. BARNHART,                         SECTION: "J"(5)
COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION

### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), presently before the Court are the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's applications for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI") benefits based on disability. (Rec. docs. 15, 16).

Harry E. Hughes, plaintiff herein, filed the subject applications for DIB and SSI benefits on November 1, 1999, with a protective filing date of October 21, 1999 on the latter, alleging disability as of August 1, 1998. (Tr. pp. 67-69, 115-117, 70). In a Disability Report completed by plaintiff on October 22, 1999, he

MAR 3 1 2006
DATE OF MAILING

Fee____
Process____
X /Dktd____
/CtRmDep____
Doc. No.____

identified high blood pressure, bad back and feet, and an inability to stand for long periods of time as the conditions resulting in his inability to work. (Tr. pp. 75-83). Those conditions first began bothering plaintiff in 1989, rendered him unable to work on January 26, 1995, and he ultimately stopped working on August 1, 1998. (Tr. p. 75).

Plaintiff's applications for DIB and SSI benefits were denied at the initial step of the Commissioner's administrative review process on February 18 and February 17, 2000, respectively, following which he requested a hearing _de novo_ before an Administrative Law Judge ("ALJ"). (Tr. pp. 45-47, 128, 48-49). That hearing went forward on October 18, 2000 at which plaintiff, who was represented by counsel, and a Vocational Expert ("VE") appeared and testified. (Tr. p. 123). On November 13, 2000, the ALJ issued a written decision in which he concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 120-126). Unfortunately, the audio tape of the administrative hearing could not be located, thus prompting the Appeals Council ("AC") to remand the case back to the ALJ to conduct another hearing. (Tr. p. 132).

Following the remand, a second hearing before the ALJ was convened on July 29, 2003 but was promptly recessed to allow plaintiff to submit to a consultative physical evaluation. (Tr.

pp. 192-199). After that evaluation was completed, the administrative hearing was reconvened on January 28, 2004 at which plaintiff, who was again represented by counsel, and a VE appeared and testified. (Tr. pp. 200-227). On March 25, 2004, the ALJ issued a second decision in which he once again concluded that plaintiff was not disabled within the meaning of the Social Security Act. (Tr. pp. 8-22). The AC subsequently denied plaintiff's request for review of the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 2-7). It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §§405(g) and 1383(c)(3).

In his cross-motion for summary judgment, plaintiff frames the issues for judicial review as follows:

    A.    Did the Administrative Law Judge apply the correct standard of review as regards the controlling legal principles in this case re: plaintiff's burden of proof once severe impairments were found?

    B.    Did the presiding Administrative Law Judge commit a reversible error in finding plaintiff capable of performing his past relevant work despite lack of support for this finding in the medical records, the lay testimony and the Vocational Expert's responses to realistically posed hypothets?

    C.    At plaintiff's age of 52 on ALJ hearing date, did the accepted medical & objective test results & lay proofs of conditions afflicting plaintiff which limited his ability to walk, sit or stand for extended periods of time in a work setting, did not this mandate a finding of

disability under a cogent Grid ruling?

(Rec. doc. 15, pp. 6-7).

Relevant to the issues to be decided by the Court are the following findings made by the ALJ:

1. [t]he claimant met the non-disability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits only through March 31, 2003.

2. [f]or the purposes of this decision, it is assumed without deciding that the claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3. [t]he claimant has hypertension and cardiomegaly. These are severe impairments within the meaning of <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985) and the Regulations.

4. [t]he claimant has no impairment or combination of impairments that meets the criteria of any of the impairments listed in the Listing of Impairments, Appendix 1, Subpart P, Regulations No. 4.

5. [t]he undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

6. [t]he claimant has the residual functional capacity to lift and carry up to 50 pounds occasionally and 25 pounds frequently, stand and walk 6 hours out of 8, sit 6 hours out of 8, and push and pull as limited by his ability to lift and carry. He can only occasionally crawl or stoop.

7. [b]ased upon the testimony of the impartial vocational expert, the undersigned Administrative Law Judge finds that the claimant's past relevant work as [a] cook's helper, truck driver, and

>     forklift operator did not require the performance
>     of work-related activities precluded by his
>     residual functional capacity (20 CFR 404.1565 and
>     416.965).
>
> 8.  [t]he claimant's medically determinable
>     hypertension and cardiomegaly do not prevent the
>     claimant from performing his past relevant work.
>
> 9.  [t]he claimant was not under a disability as
>     defined in the Social Security Act at any time
>     through the date of the decision. (20 CFR
>     404.1520(e) and 416.920(e)).

(Tr. pp. 21-22).

Judicial review of the Commissioner's decision to deny DIB or SSI benefits is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's decision, and (2) whether the decision comports with relevant legal standards. <u>Anthony v. Sullivan</u>, 954 F.2d 289, 292 (5th Cir. 1992); <u>Villa v. Sullivan</u>, 895 F.2d 1019, 1021 (5th Cir. 1990); <u>Fraga v. Bowen</u>, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); <u>Richardson v. Perales</u>, 402 U.S. 389, 91 S.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. <u>Johnson v. Bowen</u>, 864 F.2d 340, 343-44 (5th Cir. 1988).

Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 515, 520 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues de novo, nor may it substitute its judgment for that of the Commissioner. Cook v. Heckler, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB or SSI benefits bears the burden of proving that he is disabled within the meaning of the Social Security Act. Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which...has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A) and 1382c(a)(3)(A). Once the claimant carries his initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. Harrell, 862 F.2d at 475. In making this determination, the Commissioner utilizes the five-step sequential analysis set forth in 20 C.F.R. §§404.1520 and 416.920, as follows:

1. an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical findings.

2. an individual who does not have a "severe impairment" will not be found to be disabled.

3. an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

4. if an individual is capable of performing the work that he has done in the past, a finding of "not disabled" must be made.

5. if an individual's impairment precludes him from performing his past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first four steps of the analysis, the claimant bears the initial burden of proving that he is disabled and must ultimately demonstrate that he is unable to perform the work that he has done in the past. Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5 (1987). In determining whether a claimant is capable of performing the work that he has done in the past, the ALJ is required to assess the demands of the prior work and to compare those demands to the claimant's present capabilities. Villa, 895 F.2d at 1022; Hollis v. Bowen, 837 F.2d 1378, 1386 (5th Cir. 1988); Epps v. Harris, 624 F.2d 1267, 1274 (5th Cir. 1980). A finding that the claimant is disabled or is not disabled at any

point in the five-step review process is conclusive and terminates the Commissioner's analysis. Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir. 1987).

At the time of the administrative hearing held on January 28, 2004, plaintiff was fifty-one years of age and had completed eleven years of formal education. He had last worked four years earlier and had past relevant work experience as a forklift operator and a laborer. Plaintiff's daily activities included staying at home, cooking, and socializing with friends and relatives. When asked why he was unable to work, plaintiff testified that he was dizzy and unsteady on his feet most of the time, that he suffered from sweats, and that his lower back and feet hurt if he walked too far. Plaintiff testified that he was taking no medication at the time due to his inability to afford it on a regular basis. His last hospital visit had been on June 18, 2003 after he fell in a local deli. Plaintiff possessed a driver's license but his driving privileges had been revoked due to non-payment of child support for one or more of his ten children who ranged in age from thirty-six to seventeen or eighteen. (Tr. pp. 200-213).

Upon being questioned by his attorney, plaintiff testified that he had decided to quit working as a forklift driver due to lower back pain and dizziness which would sometimes make him lose his balance, fall, become unconscious, and require hospitalization.

Plaintiff admitted that prescribed medication helped his hypertension but that his blood pressure often spiked with stress. When that would happen, plaintiff's chest would tighten, he would start breathing rapidly, and he would become dizzy. He further testified to stiffness in his lower back, ankles, hands, and knees and edema in his feet and hands. Plaintiff also had difficulty with bending and gripping and experienced sharp chest pain when attempting to lift heavy objects. Even when at rest, plaintiff indicated that his back would become stiff and that his leg would lock up. Plaintiff estimated that he could only walk one block before having to stop and that his back became stiff when he sat for too long. (Tr. pp. 213-219).

John Yent, a VE, was next to take the stand. He began by first characterizing the exertional and skill demands of plaintiff's past work as follows: forklift driver (medium, semiskilled); laborer (heavy, unskilled); truck driver (medium, semiskilled); and, cook's helper (medium, semiskilled). The ALJ then posed a hypothetical question to Yent which assumed an individual of forty-six years of age and who had plaintiff's educational and work experience; who could lift fifty pounds occasionally and twenty-five pounds frequently; and, who could occasionally crawl and stoop. Presented with that hypothetical question, the VE testified that the described individual could

perform plaintiff's past relevant work as a forklift driver, truck driver, and cook's helper. Yent further testified that his answer to the hypothet would not change if the individual were fifty or fifty-one years of age. Upon being tendered to plaintiff's counsel for further questioning, the VE testified that if an individual suffered from unpredictable losses of consciousness, it would be difficult for him to hold a job. Dizziness and a loss of grip strength such that the individual could not consistently carry ten-pound objects would similarly render the individual unemployable. If the individual could not sit for longer than ninety minutes at a time or walk for more than a block without pain and stiffness, that would eliminate plaintiff's past job as a truck driver. Similarly, if the described individual could sit for only one hour per day and stand for only one to two hours per day, work would be precluded. (Tr. pp. 219-227).

As noted earlier, plaintiff challenges the Commissioner's decision to deny Social Security benefits on three grounds. In the first of those, plaintiff alleges that "[t]he presiding ALJ pa[id] lip service to the controlling landmark case of <u>Stone v. Heckler</u>, 752 F.2d 1099 (5th Cir. 1985) at the 3rd step of the sequential analysis set out in his unfavorable decision but when he does so he commits reversible error as in this step he finds that Plaintiff is suffering from two severe impairments, i.e., cardiomegaly and

hypertension, but then he fails to mention or apply the shifting of the burden of proof to the Commissioner once severe impairments are recognized ..." (Rec. doc. 15, p. 15).

As discussed above, the Commissioner utilizes the five-step sequential analysis set forth in §§404.1520 and 416.920 to determine whether or not a claimant is disabled. Under that analysis, the burden of proof remains with the claimant through the first four steps and is shifted to the Commissioner at the fifth step only if the claimant successfully demonstrates that he is unable to perform the work that he has done in the past. Bowen, 482 U.S. at 146 n.5, 107 S.Ct. at 2294 n. 5. In Stone v. Heckler, 752 F.2d 1099, 1102-04 (5th Cir. 1985), the Fifth Circuit disapproved of the summary dismissal of benefits applications at the second step of the sequential evaluation such that any claim based upon an impairment which is more than a "slight abnormality" will proceed through step two of the five-step analysis. Anthony, 954 F.2d at 293-94; Stone, 752 F.2d 1102-04.

In the present case, plaintiff was found to suffer from severe impairments at the second step of the five-step sequential analysis. Accordingly, the analysis properly proceeded beyond step two to step four where it was determined that plaintiff could perform his past relevant work. As plaintiff's applications were not denied at the second step based on a finding of non-severity,

11

Stone is not implicated here. Chaparro v. Bowen, 815 F.2d 1008, 1011 (5th Cir. 1987). And because the analysis never reached the fifth step, the burden of proof properly remained with the plaintiff at all times. Bowen, 482 U.S. at 146 n.5, 107 S.Ct. at 2294 n.5; Lovelace, 813 F.2d at 57. This claim is without merit.

Plaintiff's second challenge to the Commissioner's decision is that the ALJ, in determining whether plaintiff was capable of performing the jobs that he has done in the past, relied on work activity that was too remote in time to the alleged disability onset date. On that point, Social Security Regulations generally provide that only the work that an individual has performed in the fifteen years preceding the disability determination is relevant to the Commissioner's inquiry. 20 C.F.R. §§404.1565, 416.965.

In answer to Section 3 of the Disability Report plaintiff completed on October 22, 1999, wherein he was asked to list the jobs that he had held in the last fifteen years that he had worked, plaintiff identified only two, a cook's helper in a restaurant from the late 1970's until 1998 and a truck driver for some unspecified duration.[1]/ (Tr. p. 76). In an undated Work History Report, plaintiff indicated that he had worked as a laborer from 1998 to

---

[1]/ Reports such as these may properly be considered by the ALJ in determining plaintiff's disability status. Vaughan v. Shalala, 58 F.3d 129, 131 (5th Cir. 1995); Villa, 895 F.2d at 1022-23.

1999, as a forklift driver from 1992 to 1997, as a truck driver from 1977 to 1982, as a roustabout helper in 1976, and as a cook's helper from 1970 to 1975. (Tr. p. 84). When plaintiff was consultatively evaluated by Dr. Felix Rabito on August 20, 2003, plaintiff reported that "... he worked as a truck driver for Elmer's Candy Company and was apparently last employed sometime during late 1998 and early 1999." (Tr. p. 170). And at the administrative hearing held on January 28, 2004, plaintiff testified that he had last worked four years earlier as a forklift driver and, before that, as a laborer. (Tr. pp. 206-207).[2]/ Later in the hearing, the ALJ posited hypothetical questions to the VE which assumed that plaintiff had past relevant work as a forklift driver, laborer, truck driver, and cook's helper. (Tr. pp. 219-221). Ultimately, the VE testified that the individual described in the hypothet could perform plaintiff's past work as a forklift driver, truck driver, and cook's helper. (Tr. pp. 220-221). Although the VE was tendered to plaintiff's counsel for cross-examination, no attempt was made to clarify plaintiff's actual work history. (Tr. pp. 221-226).

The responsibility for weighing and resolving conflicts in the

---

[2]/ In his written decision denying Social Security benefits, the ALJ aptly noted that the forklift driver work activity that plaintiff testified to would have been some time after the alleged onset date of August 1, 1998. (Tr. p. 14).

13

evidence is a task entrusted to the ALJ in the first instance. <u>Carrier v. Sullivan</u>, 944 F.2d 243, 247 (5th Cir. 1991); <u>Griego v. Sullivan</u>, 940 F.2d 942, 945 (5th Cir. 1991). Faced with the conflicting information before him, the ALJ concluded that plaintiff's past relevant work experience included that as a forklift driver, truck driver, and cook's helper. While two of those jobs may be too temporally distant to constitute past relevant work within the meaning of the Regulations, plaintiff undoubtedly worked as a forklift driver within the fifteen years preceding the alleged onset of disability and the VE's testimony to that effect constitutes substantial evidence upon which to affirm the Commissioner's decision. Procedural perfection in administrative proceedings is simply not required. <u>Mays v. Bowen</u>, 837 F.2d 1362, 1364. (5th Cir. 1988).

In his third and final challenge to the Commissioner's decision, plaintiff alleges that he should have been found disabled under some unspecified section of the Medical-Vocational Guidelines (the "Grids").

Unlike the typical Grid case in which the claimant argues that the Medical-Vocational Guidelines were wrongfully applied in a rigid, mechanical fashion to find him not disabled, <u>see</u>, e.g., <u>Wingo v. Bowen</u>, 852 F.2d 827, 831 (5th Cir. 1988), plaintiff herein argues that the Grids <u>should</u> have been applied to find him

disabled. The use of the Grids is appropriate, however, only if the fifth step in the §§404.1520/416.920 analysis is reached. <u>Selders v. Sullivan</u>, 914 F.2d 614, 618 (5th Cir. 1990)(citing 20 C.F.R. §404.1569 and Subpt. P, App. 2; <u>Fraga</u>, 810 F.2d at 1304). Here, because the ALJ concluded his analysis at the fourth step, resort to the Grids was not justified. <u>Torres v. Harris</u>, 502 F.Supp. 518, 524 (E.D. Pa. 1980). And even if the analysis had reached the fifth step, the use of expert vocational testimony, rather than the Grids, is the preferred method of proving that there is other work available that the claimant can perform. <u>Fields v. Bowen</u>, 805 F.2d 1168, 1170-71 (5th Cir. 1985); <u>Lawler v. Heckler</u>, 761 F.2d 195, 197-98 (5th Cir. 1985); <u>Dellolio v. Heckler</u>, 705 F.2d 123, 126-28 (5th Cir. 1983). This claim is without merit.

## RECOMMENDATION

For the foregoing reasons, it is recommended that plaintiff's motion for summary judgment be denied and that defendant's motion for summary judgment be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court,

provided that the party has been served with notice that such consequences will result from a failure to object. <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996)(<u>en</u> <u>banc</u>).

New Orleans, Louisiana, this 9th day of March, 2006.

                                             _____
                                             UNITED STATES MAGISTRATE JUDGE